UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| DR. IBRAHIM MANSOUR, | ) | Case No. 2:23-cv-136 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| LA PORTE CLINIC LLC, d/b/a NORTHWEST | ) | |
| MEDICAL GROUP – LA PORTE, LA PORTE | ) | |
| HOSPITAL COMPANY LLC d/b/a NORTHWEST | ) | |
| HEALTH –LAPORTE, CHSPSC, LLC, | ) | |
| COMMUNITY HEALTH SYSTEMS, INC., | ) | |
| and ASHLEY DICKINSON, | ) | |
| | ) | |
| Defendant(s). | ) | JURY TRIAL DEMANDED |

## COMPLAINT

Dr. Ibrahim Mansour, by and through his attorney, Schuyler D. Geller of Burke Costanza & Carberry LLP, alleges and states as follows:

## PRELIMINARY STATEMENT

1.        Plaintiff, Dr. Ibrahim Mansour, brings this action against Defendants for violations of the Americans with Disabilities Act ("ADA") as amended by the ADA Amendments Act ("ADAAA"), 42 U.S.C. §§ 12101 to 12213 (collectively, the "ADA"), the Family and Medical Leave Act (FMLA) 29 U.S.C. §2601, *et seq*., and Title VII of the Civil Rights Act of 1964 (Title VII) 42 U.S.C. § 2000e, *et seq.*

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the ADA, FMLA, and Title VII. This court also has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367(a).

## VENUE

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because of the unlawful conduct alleged below was committed in the Northern District of Indiana.

## CONDITIONS PRECEDENT

4. On May 25, 2022, Plaintiff timely filed a charge of discrimination and retaliation in violation of ADA, FMLA, and Title VII with the Equal Employment Opportunity Commission (EEOC).

5. On or about January 29, 2023, the EEOC issued Dr. Mansour a Notice of Right to Sue. This Complaint has been filed within 90 days of receipt of that notice.

## PARTIES

6. Plaintiff, Dr. Mansour is an adult male and resident of Oak Lawn, Illinois.

7. Dr. Mansour is an employee, as defined by the ADA, FMLA and Title VII. Dr. Mansour worked for Defendants as an Interventional Cardiologist in La Porte, Indiana, from

approximately August 1, 2019 through February 9, 2023, the date he was placed on indefinite unpaid leave by Defendants.

8. Defendant La Porte Clinic Compony, LLC, d/b/a Northwest Medical Group ("Northwest Medical Group") maintains offices and does business in La Porte, Indiana but its principal office is located at 4000 Meridian Boulevard, Franklin, Tennessee and its managers are Tim L. Hingtgen, Kevin J. Hammons, and Benjamin C. Fordham.

9. Defendant La Porte Hospital Company, LLC d/b/a Northwest Heath – La Porte, ("Northwest Health") maintains offices and does business in La Porte, Indiana, including the Hospital located at 1331 State St., La Porte IN. Northwest Health – La Porte has a principal office located at 4000 Meridian BLVD, Franklin, Tennessee and its managers are Tim L. Hingtgen, Kevin J. Hammons, and Benjamin C. Fordham.

10. Defendant CHSPSC, LLC ("CHSPSC") is a management company which manages and operates hospitals and other affiliates of Community Health Systems, Inc., including Northwest Medical Group and Northwest Health –La Porte. CHSPSC maintains offices and does business in La Porte, Indiana, and its principal office is located at 4000 Meridian BLVD, Franklin, Tennessee and its managers are Tim L. Hingtgen, Kevin J. Hammons, and Benjamin C. Fordham.

11. Defendant Community Health Systems, Inc. ("CHS") owns CHSPSC, LLC, Northwest Medical Group and Northwest Health, along with approximately eighty other hospitals throughout the country.

12. CHS and/or CHSPC owns and manages Northwest Medical Group and Northwest Health and are involved in establishing and enforcing their employment decisions and policies. Collectively, all of these entities are hereinafter referred to as "Defendant Employers."

3

13. Defendant Ashley Dickinson is the former Chief Operating Officer for CHS, and former Chief Executive officer of La Porte Hospital and is currently Chief Executive Officer for Northwest Health.

14. At all relevant times, employees of Defendant Employers acted as agents and servants for Defendant Employers.

15. At all relevant times, employees of Defendant Employers were acting within the scope of their authority, and in the course of employment, and under the direct control of Defendant Employers.

16. At all relevant times, Defendant Employers have continuously and are currently doing business in the Northern District of Indiana and have been employers and persons as defined under the ADA, FMLA, and Title VII.

**FACTS**

17. Dr. Mansour is an Interventional Cardiologist with a special interest in coronary and peripheral arterial disease (PAD) and interventions, heart failure, echocardiography, preventative cardiology and cardiovascular health.

18. Dr. Mansour is also of Palestinian descent and is Muslim.

19. Dr. Mansour began working for Defendants on August 1, 2019, pursuant to a 36-month employment agreement with Defendants. (Exhibit A).

20. During his employment with Defendant Employers, Dr. Mansour had an exemplary performance record, was respected by patients and peers, and met and exceeded Defendants' legitimate expectations.

21. Around May 2021, Dr. Mansour began experiencing pain in his back and side.

22. In July of 2021, Dr. Mansour was diagnosed with multiple myeloma and had a pathological fracture of his fourth lumbar vertebra secondary to cancer cell infiltration.

23. Multiple myeloma is a cancer that forms in the body's plasma cells. Plasma cells are located in bone marrow and are an important part of the immune system. Multiple myeloma is a condition that occurs when plasma cells become cancerous and grow out of control. This life-threatening condition can lead to low blood counts, weakened bones, compromised and weakened immune system, and kidney damage and failure.

24. As a result of Dr. Mansour's disability, major life activities, such as endurance, stamina, strength, immune system functions, and bone strength and density, were substantially limited. Therefore, Dr. Mansour is a qualified individual with a disability under the Americans with Disabilities Act.

25. Following his diagnosis, Dr. Mansour informed Ashley Dickenson – CEO of Northwest Health, and Tami Yarbough – Employee Heath Coordinator, that he would need a reasonable accommodations consisting of: a) inability to work in catheter lab due to being unable to wear a lead apron or stand 20-30 minutes; b) inability to work in the hospital due to his high risk of infection due to his immunocompromised state; c) light duty with a maximum work week of 32 hours; and d) intermittent time off for medical infusions, and follow-up treatment and monitoring.

26. Dr. Mansour provided Defendants with a doctor's note from his treating physician to support his request for reasonable accommodations.

27. Dr. Mansour also filed for intermittent leave under Family Medical Leave Act ("FMLA") with FMLASource®, Defendant Employers' FMLA Administrator. FMLASource

5

approved Dr. Mansour's request and placed him on intermittent FMLA leave from August 9, 2021 to August 8, 2022. (Exhibit B)

28.     Dr. Mansour's requests for reasonable accommodations were initially granted and he began working from home in August 2021. Despite working from home, Dr. Mansour was able to perform his essential job functions, including, reading echocardiograms, EKGs, Holter and event monitors, and stress tests. Dr. Mansour also returned patient calls and answered their questions, which was essential to the other cardiologists in the practice as it freed them up for other tasks.

29.     As soon as Plaintiff started working from home, Defendants changed Dr. Mansour's compensation and started paying him a reduced salary based on a 32-hour work week.

30.     On or about October 19, 2021, mere months into his intermittent leave, Tracy Knapp, along with Karen Jedrysek, the director of Human Resources, and Kayla Banks – Office Manager, had a telephone call with Dr. Mansour, wherein Tracy Knapp informed Dr. Mansour that Defendants wanted to change his compensation structure yet again to a strictly RVU-production based compensation. Dr. Mansour objected as this was contrary to his employment agreement and complained that he felt that this adverse action was based on his disability.

31.     On or about November 15, 2021, over Dr. Mansour's objection, Defendants again unilaterally changed Dr. Mansour from a salary to an hourly based compensation structure and instructed him to report the hours he worked on a weekly basis to his office manager, Kayla Banks.

32.     At all relevant times, Dr. Mansour performed his job consistent with Defendants' reasonable expectations.

33. Defendants never told Dr. Mansour that he was failing to meet Defendants' job expectations or that he was unable to perform an essential function of his job.

34. In January 2022, Dr. Mansour had to take additional FMLA leave when he was hospitalized for an Autologous Stem Cell transplant to treat his multiple myeloma which caused him to work fewer hours that month.

35. Despite the fact that treatment was one of the reasons FMLA leave had been granted by FMLA Source, weeks after his hospitalization, on February 9, 2022 Tracy Knapp and Karen Jedrysek called Dr. Mansour at the direction of Dickinson, and informed him that, despite his prior approval for FMLA intermittent leave until August 8, 2022, he was being placed on unpaid leave effective immediately pending a full medical release. Defendants provided no reason or justification for this action.

36. Dr. Mansour complained to Tracy Knapp, Karen Jedrysek, and Ashley Dickinson that this action violated his rights under the ADA to be free from illegal discrimination and retaliation. Dr. Mansour also requested written documentation setting forth the change in his employment status and reason for the change, but Defendants refused to provide this requested information.

37. On February 9, 2022, Dr. Mansour stopped receiving pay or benefits from Defendants.

38. Defendants never engaged in an interactive process with Dr. Mansour, and never initiated or participated in any give and take discussions as to how Defendants, consistent with the requirements of the ADA, might reasonably accommodate Dr. Mansour's disability/impairments.

7

39. Defendants' actions, including their interference with Dr. Mansour's previously approved intermittent leave, also violated Dr. Mansour's rights under the FMLA.

40. On multiple occasions, including in correspondence dated February 28, 2022 to the Chief Executive Officer and members of the hospital's administration, Dr. Mansour further objected to the adverse employment action of placing him on unpaid leave without justification. Dr. Mansour also repeated his request for written documentation of the change in his employment status and the reasoning behind it, to no avail.

41. Having received no response from Defendants, Dr. Mansour, through counsel, wrote to Ashley Dickenson on April 8, 2022, objecting to Defendants' unlawful and discriminatory conduct of placing Dr. Mansour on unpaid leave.

42. Dr. Mansour believes that the adverse employment actions may have been motivated by a discriminatory intent based on his being Muslim and/or Palestinian.

43. Defendants treated similarly situated employees, including Dr. David Gorecki, who was neither Muslim or Palestinian, more favorably by giving him accommodations and leaves of absence for medical reasons without subjecting him to adverse employment actions.

44. On May 22, 2022, Dr. Mansour submitted a charge to the EEOC based on Defendants' unlawful employment practices and their illegal discrimination and retaliation.

45. In response, Karen Jedrysek and Tracy Knapp called Dr. Mansour on June 28, 2022 and advised that Defendants wanted him to return to work June 29, 2022, in-person – and in the hospital, full-time, without accommodations – despite the fact that they had knowledge that due to his disability, Dr. Mansour was still immuno-compromised and he still required the reasonable accommodations set forth in paragraph 19. Dr. Mansour directed Defendants to speak with his counsel, but they failed to do so.

46.     On July 7, 2022, Keith Nicholas, the newly appointed CEO of Northwest Health – La Porte sent a retaliatory letter to Dr. Mansour accusing him of breaching his employment agreement for not showing up to work on June 29, 2023.

## COUNT ONE

### Violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq*.

### Against Defendant Employers

47.     Dr. Mansour repeats the realleges paragraphs 1-39 as if fully stated herein.

48.     In July 2021, Dr. Mansour was diagnosed with Multiple Myeloma making him a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12111 of the ADA. Dr. Mansour could perform the essential functions of his position with reasonable accommodations.

49.     Following his diagnosis, Dr. Mansour notified Defendants of his diagnosis and his need for reasonable accommodations, along with records from his medical provider supporting the need for the reasonable accommodations.

50.     Dr. Mansour's requests for reasonable accommodations were initially granted in August 2021, however, Defendants later subjected him to a series of adverse employment actions culminating in the refusal to offer any accommodations when Defendants placed Dr. Mansour on unpaid leave on February 9, 2022.

51.     Defendants refused to engage in the interactive process and denied Dr. Mansour's accommodations without providing any reason whatsoever.

52.     The above-described deliberate discrimination, harassment, and retaliation against Dr. Mansour were because of his disability, record of disability, and/or his perceived disability, and constitute unlawful discrimination and retaliation in violation of the ADA.

53.     Dr. Mansour suffered damages as a direct and proximate result of Defendants' unlawful discriminatory actions, including past and future lost wages and benefits, emotional distress, and the costs of bringing this action.

54.     Defendants intentionally violated Dr. Mansour's rights under the ADA with malice or reckless indifference and, as a result, are liable for punitive damages.

## COUNT TWO

### Interference and retaliation in Violation of the Family and Medical Leave Act

### Against All Defendants

55.     Dr. Mansour repeats and realleges paragraphs 1-54 as if fully stated herein.

56.     Defendants are employers covered by FMLA pursuant to 29 U.S.C. §2601 *et seq.* because they are private businesses that employ fifty or more employees for each working day for at least twenty work weeks in the year prior to Dr. Mansour's leave.

57.     Defendant Dickinson supervised Dr. Mansour and was, in part, responsible for the discriminatory and retaliatory actions described above.

58.     Dr. Mansour is an FMLA-eligible employee because he was employed by Defendant Employers for approximately twenty-four months prior to requesting FMLA leave and worked over 1,250 hours in the twelve-month period prior to his request.

59.     Dr. Mansour was entitled to intermittent leave under the FMLA because of his own serious health condition.

60.	FMLASource approved Dr. Mansour's request and placed him on intermittent FMLA leave from August 9, 2021 to August 8, 2022, and Defendants were notified of this decision. (Exhibit B)

61.	Defendants engaged in prohibited conduct under the FMLA by interfering with, restraining, or denying Dr. Mansour's rights provided under the Act.

62.	Defendants denied Dr. Mansour a benefit to which he was entitled under the FMLA because it refused to allow him to use the full amount of requested and approved leave.

63.	Defendants discriminated and retaliated against Dr. Mansour in violation of his rights under the FMLA by taking adverse actions against him, including reducing his compensation, changing him to an hourly employee, and by stopping his pay and benefits on February 9, 2022 when they notified him that he would not be permitted to work until he had a full medical release.

64.	As a direct and proximate result of Defendants' wrongful acts and omissions, Dr. Mansour has suffered and continues to suffer substantial losses, including, past and future lost wages and benefits. Dr. Mansour is also entitled to liquidated damages, attorneys' fees and costs, and other damages as recoverable by law.

## COUNT THREE

### Violation of Title VII of the Civil Rights Act of 1964

### Against Defendant Employers

65.	Dr. Mansour repeats and realleges paragraphs 1-64 as if fully set forth herein.

66.	Dr. Mansour is Palestinian descent and is Muslim.

67.     Defendant Employers discriminated and marginalized Dr. Mansour by treating similarly situated employees, including Dr. David Gorecki, who was neither Muslim or Palestinian, more favorably by giving him accommodations and leaves of absence for medical reasons without subjecting him to adverse employment actions.

68.     As a direct and proximate result of Defendants unlawful discriminatory actions, Dr. Mansour has suffered and continues to suffer damages, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

69.     Defendants intentionally violated Dr. Mansour's rights under Title VII, with malice or reckless indifference and, as a result, are liable for punitive damages.

## COUNT FOUR

### Breach of Contract

### Against Defendant Employers

70.     Dr. Mansour repeats and realleges paragraphs 1-64 as if fully stated herein.

71.     Dr. Mansour was employed by Defendant Employers pursuant to a 36-month employment agreement ("Agreement").

72.     The Agreement guaranteed Dr. Mansour's title/position, and his salary and benefits, for the term of the Agreement.

73.     The Agreement provides limited grounds for early termination, without cause (§4.2) and with cause (§4.3), neither of which were applicable.

74.     Plaintiff performed his obligations under the agreement.

75.     By reducing his compensation, changing him to hourly employee, and by stopping his pay and benefits on February 9, 2022 when they notified him that he would not be

permitted to work until he had a full medical release, Defendant Employers breached the Agreement.

76.	As a direct and proximate result of Defendant Employers aforementioned conduct, Dr. Mansour has been damaged and continues to sustain damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

A. Award Plaintiff for his past and future loss of wages and benefits, plus interest;

B. Award Plaintiff compensatory and punitive damages;

C. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action; and

D. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Schuyler D. Geller*
Schuyler D. Geller (33699-45)
Attorney for Plaintiff, Ibrahim Mansour

Burke Costanza & Carberry LLP
9191 Broadway
Merrillville, IN 46410
219.769.1313 / Fax 219.769.6806
geller@bcclegal.com

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.