UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

IBRAHIM MANSOUR,

    Plaintiff,

    v.

LA PORTE CLINIC LLC d/b/a
NORTHWEST MEDICAL GROUP – LA
PORTE, et al.,

    Defendants.

Case No. 2:23-CV-136-GSL-JEM

**OPINION AND ORDER**

This matter is before the Court on Magistrate Judge John Martin's Report and Recommendation [DE 77], entered on December 12, 2024. Judge Martin recommends that the Court conclude that Plaintiff Ibrahim Mansour failed to establish that Defendant Community Health Systems, Inc. (1) was Plaintiff's employer, (2) was involved in the operation of the other entity-defendants named in this case, and (3) did not substantially observe corporate formalities with the other entity-defendants. For the reasons below, the Court OVERRULES Mansour's objections and ADOPTS Judge Martin's recommended findings of fact.

**PROCEDURAL BACKGROUND**

On April 21, 2023, Plaintiff Mansour initiated this lawsuit by filing a Complaint alleging violations of the Americans with Disabilities Act, the Family and Medical Leave Act, and Title VII of the Civil Rights Act of 1964. In that complaint, he named the following parties as defendants: (1) La Porte Clinic LLC doing business as Northwest Medical Group – La Porte (the "Clinic"), (2) La Porte Hospital Company LLC doing business as Northwest Health – Laporte

(the "Hospital"), (3) CHSPSC, LLC, (4) Community Health Systems, Inc. ("CHSI"), and (5) Ashley Dickinson.

On June 16, 2023, CHSI moved for dismissal, arguing that the Court lacks personal jurisdiction over CHSI. On January 22, 2024, Judge James Moody, who was at the time assigned to this case, referred the case to Magistrate Judge John Martin to hold any necessary hearings and to enter a report and recommendation on whether Mansour has established that CHSI was Mansour's employer or joint employer, was involved in the operation of the other named entity-defendants, or substantially observed corporate formalities with the other entity-defendants. Judge Moody noted that the Court could not rule on CHSI's motion to dismiss until these preliminary factual disputes were resolved, and he therefore terminated the pending status of the motion to dismiss for statistical purposes only, clarifying that the motion would be restored to pending status after the findings of fact were made. The case was subsequently reassigned to the undersigned judge on March 25, 2024.

Judge Martin held an evidentiary hearing on August 23, 2024, and entered his Report and Recommendations on December 12, 2024. Mansour filed his objection to Judge Martin's Recommendations on December 27, 2024, to which CHSI responded on January 10, 2025. The matter is now ripe for the Court's review.

## LEGAL STANDARD

Under 28 U.S.C. § 636(b)(1)(B), a judge may designate a magistrate judge to conduct evidentiary hearings and submit proposed findings of fact. The presiding judge "may accept, reject, or modify, in whole or in part," the magistrate judge's report. *Id.* § 636(b)(1). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; *see also* Fed. R. Civ. P.

2

72(b)(3). The Court reviews the portions of the report to which there are no objections for clear error. *Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 858 (7th Cir. 2023) (citing *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999)).

Though the Court must make a de novo determination of contested matters, "[t]he district court is not required to conduct another hearing to review the magistrate judge's findings or credibility determinations." *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995); *see also Pinkston v. Madry*, 440 F.3d 879, 893 (7th Cir. 2006) ("[W]hile the statute requires a 'de novo determination' by the district court, a 'de novo hearing' is not required."); *accord United States v. Raddatz*, 447 U.S. 667, 674 (1980).

The findings of fact are needed to resolve CHSI's motion to dismiss for lack of personal jurisdiction. Accordingly, the burden is on Plaintiff, as the party asserting jurisdiction, to establish that jurisdiction exists. *Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014). Because an evidentiary hearing on the matter took place, Plaintiff must prove the facts by a preponderance of the evidence. *Id.*

## ANALYSIS

As an initial matter, there are several similar-sounding names relevant to this litigation. The defendant who has moved for dismissal is "Community Health Systems, Inc.," which will be shortened to "CHSI" in this opinion. CHSI "is a stock holding company" whose "subsidiary companies and partnerships own or lease and operate their respective hospitals and other assets and businesses." Pl.'s Ex. E, at 3, ECF No. 78-5. Another defendant is CHSPSC, LLC, which is an indirect subsidiary of CHSI and provides services, including legal services, to member entities of CHSI. "CHS/Community Health Systems, Inc." is a non-party to this case, and CHSI has a

direct ownership interest in it. "Community Health Systems" and "CHS" are trade names and are not legal entities. There is a related trademark consisting of the letters CHS and six dots.

Further, there are evidentiary conflicts. The Court is tasked with resolving them, and it is within the undersigned's authority to accept Magistrate Judge Martin's determinations. By holding the evidentiary hearing, Judge Martin was in the best position to weigh the conflicting evidence and make findings of fact. Upon review of the case record, including the transcript of the evidentiary hearing, the undersigned finds Judge Martin's determinations to be sound. In general, CHSI's witnesses are better able to speak about the structure and business workings of CHSI and its subsidiaries than Plaintiff is, as Plaintiff's experience is working for two member entities as an interventional cardiologist and CHSI's witnesses are higher in the organizational structure and work in positions where the delineation between entities is more relevant. There are points in the record that corroborate this. For example, Plaintiff, in his testimony, at times conflates CHSI and CHS.

### A. Plaintiff's Employer

In determining whether an employer-employee relationship exists for the purposes of a Title VII lawsuit, the Court considers the five factors of the *Knight* test:

> (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

*Knight v. United Farm Bureau Mut. Ins.*, 950 F.2d 377, 378–79 (7th Cir. 1991). Plaintiff bears the burden of proof by a preponderance of the evidence.

Regarding the first *Knight* factor, a joint employer must exercise significant control over employees' working conditions. *Whitaker v. Milwaukee Cnty., Wisconsin*, 772 F.3d 802, 810 (7th

4

Cir. 2014). The determination of exercise of control is case-specific, but factors the Court can consider include: "(1) supervision of employees' day-to-day activities; (2) authority to hire or fire employees; (3) promulgation of work rules and conditions of employment; (4) issuance of work assignments; and (5) issuance of operating instructions." *Id.* (quoting *DiMucci Const. Co. v. N.L.R.B.*, 24 F.3d 949, 952 (7th Cir. 1994)).

There is no evidence that CHSI directed Plaintiff's work as a cardiologist in any detailed manner. It did not schedule his working hours, hire him, issue work assignments, or direct that his cardiology work be performed in a specific way. Plaintiff worked at the Clinic and the Hospital as an interventional cardiologist. Though Plaintiff testified that he worked for CHSI and that amendments to his employment agreement had to be approved by CHSI, his employment agreement names the Clinic as his employer. A related email message states that Plaintiff's employment agreement is between him, "Community Health Systems" (not CHSI), and Ashley Dickinson, who was an authorized signatory of the Clinic. Further, an email confirmation regarding an amended employment agreement only refers to Community Health Systems and CHS, not CHSI.

Plaintiff argues that CHSI exercises control over the hiring process of its subsidiaries through its "CHS CEO Development Program," which is used to train subsidiary employees for potential promotion to leadership positions across affiliate hospitals and the corporate leadership team. This is different from having the power to hire or fire an employee. Instead, this is the cultivation of qualities and skills valued in leadership positions throughout the affiliated companies.

The Hospital's CEO, alongside the Board of Trustees, provides guidance, insight, and assistance with decision making regarding the day-to-day operations of the Hospital and Clinic,

5

and medical and administrative staff employed by the Hospital and Clinic handle their day-to-day operations. The Hospital's and Clinic's president (who is also president and CFO of CHSI) only performs administrative functions and has no operational oversight responsibilities for the Clinic or Hospital. He has no office in either facility, nor has he visited either facility. He oversees financial matters relating to CHSI's subsidiaries and consolidated entities. He lacks authority to hire or fire any officers of CHSI's subsidiaries, including the CEOs of the Clinic and Hospital. Thus, day-to-day activities are supervised by the Clinic and Hospital, not CHSI.

Plaintiff maintains that CHSI was his employer or joint employer because of the code of conduct that governs each CHS-affiliate employee and the related annual learning modules that every such employee participates in. The Securities and Exchange Commission requires all publicly-traded companies and their subsidiaries to adopt a code of conduct. The Clinic and Hospital are required by contract to adhere to the "Community Health Systems Code of Conduct," which their managing member has adopted. As they do with all of their policies, the Clinic and Hospital tailored the Code of Conduct to their specific needs and contexts. As a condition of his employment, Plaintiff was required to adhere to the Clinic's and Hospital's policies, which includes the code of conduct. The code of conduct governs workplace conduct, conduct toward patients, and billing practices, among other matters. The "Compliance Program" provides ways for individuals to ask compliance questions and report suspected violations, including through a confidential hotline.

The Executive Compliance Committee, which is responsible for the code of conduct's adoption, amendment, and ultimate enforcement, is composed of CHSPSC, LLC employees and was established by the CHSI Board of Directors. The committee also conducts internal investigations of CHSI subsidiaries. Though this committee maintains the hotline for all affiliate

employees to use, individual employee complaints are handled at the local level. The local subsidiary administers any disciplinary actions stemming from Code of Conduct violations.

The code of conduct provides boundaries of acceptable behavior, such as forbidding unlawful harassment and discrimination, workplace violence, and on-the-job substance abuse, and mandating the confidentiality of patient information. It outlines patient rights and legal requirements placed on hospitals and physicians. While the code of conduct places limits on employees, it does little in terms of requiring employees like Plaintiff to take specific actions or perform their occupations in specific ways. Coupled with the fact that this code of conduct is most directly imposed on Plaintiff's employment by the Clinic and Hospital, the code of conduct is not a significant exercise of control by CHSI over Plaintiff.

For the second factor, interventional cardiology is a skilled field requiring many years of formal schooling. Plaintiff presumably learned these skills outside of his work for the Clinic and Hospital, and there is no evidence that CHSI had any role in Plaintiff learning these skills.

For the third factor, CHSI's only business is that of a publicly-traded company. It does not have any operations, revenues, expenses, or assets. It has no employer identification number and is not registered to do business in Indiana. Additionally, the Clinic and Hospital have their own bank accounts. Payment for medical care received from the Clinic or Hospital are paid directly to that entity and not to CHSI.

Plaintiff asserts that CHSI controlled the Clinic's and Hospital's suppliers and purchasing decisions. When Plaintiff had complaints about cardiology equipment and supplies, however, he did not reach out to anyone outside of Clinic and Hospital personnel. An email he received on the subject names a "CHS CV Strategic Sourcing Team" that created a "Supply Chain Physician

Advisory Committee" to decide with what company to contract for the provision of certain cardiac equipment, but this email does not implicate CHSI as the ultimate actor.

Plaintiff testified that assets and resources are transferred between subsidiaries without consideration, such as N95 masks, ventilators, and cardiac catheter equipment. The 2022 Community Impact Report reflects such sharing of resources among affiliate entities, though neither Plaintiff in his testimony nor the report itself state that CHSI—and not some other CHSI subsidiary—is dictating that these transfers occur.

In sum, there is some resource sharing and consolidated supply-chain decisionmaking between affiliate entities. Plaintiff lacks evidence tying this directly to CHSI, an entity with no operations or assets of its own. Further, aside from these individual matters of more collective action, there is a lack of evidence that, in general, CHSI bears the responsibility for the Clinic's and Hospital's costs of operation.

For the fourth factor, neither payment nor benefits come from CHSI. A copy of Plaintiff's W-2 tax form lists his employer's name as "1591-La Porte Clinic Company," though a header on the document provides Plaintiff's name, employee number, and "Community Health Systems." On its face, the tax form does not reference CHSI and explicitly names another entity as Plaintiff's employer. This, too, is not evidence of CHSI employing Plaintiff.

Plaintiff asserts that CHSI controlled his benefits. The Professional Services Agreements between CHSPSC, LLC and the Hospital and between CHSPSC, LLC and the Clinic govern employee benefits, which "shall generally be made available to the employees of all affiliates of Community Health Systems, Inc. on a group-wide or sub-group-wide basis." Def.'s Ex. 6 ¶ 1.11, ECF No. 78-17; Def.'s Ex. 7 ¶ 1.11, ECF No. 78-18. Hearing testimony explains that insurance benefits "are run largely, if not exclusively, through CHS/Community Health Systems, Inc." Tr.

136:3-4, ECF No. 70 (testimony of Russell Baldwin, vice president of CHSPSC, LLC). Plaintiff testified that his medical insurance benefits were provided by CHS or Community Health Systems, which are trade names and are not synonymous with CHSI. Plaintiff did not testify to CHSI sponsoring any benefit plans. CHS/Community Health Systems, Inc. also owns and licenses for use the "CHS" and "Community Health Systems" trade names.

The fifth factor, length of job commitment and expectations provides little aid in resolving the question at hand, though the Court notes that Plaintiff's work for the Clinic and Hospital appears to be coterminous with the connection to CHSI through CHSI's indirect ownership interest in the Clinic and Hospital. This was not a matter of working on a short-term contract for CHSI, for example.

Looking at all of the factors as a whole, they weigh significantly against finding CHSI to be Plaintiff's employer or joint employer. CHSI lacks the type and extent of control, responsibility, and involvement in Plaintiff's employment to be considered his employer or joint employer.

B. **Corporate Formalities**

"Parents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent." *IDS Life Ins. v. SunAmerica Life Ins.,* 136 F.3d 537, 540 (7th Cir. 1998). This general level of oversight is insufficient to justify piercing the corporate veil for the exercise of personal jurisdiction. Additionally, "the provision of administrative services by a parent for a subsidiary does not trigger personal jurisdiction over the parent." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000). However, if a parent company exerts an unusually high degree of control over its subsidiary or fails to observe corporate formalities, the Court can pierce the corporate veil and impute the

jurisdictional contacts of the subsidiary to the parent. *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 733 (7th Cir. 2013).

CHSI, CHS/Communnity Health Systems, Inc., and CHSPSC, LLC are independently formed and function independently. CHSI's Board of Directors are elected by its shareholders. The Board of Directors adopted the bylaws that govern CHSI. CHS/Community Health Systems, Inc. is governed by its own set of bylaws, which was adopted by its Board of Directors. CHSPSC, LLC is governed by its own Board of Directors and maintains an operating agreement. The only overlap among these boards is Tim Hingtgen, who is a director on all three boards.

The Clinic and Hospital are each limited liability companies that are managed by their sole member and are operated by individuals employed by the Clinic and Hospital. Neither entity has a board of directors. They do have a Board of Trustees, none of whom are employed by or sit on the boards of CHSI, CHS/Communnity Health Systems, Inc., or CHSPSC, LLC.

CHSI, CHS/Communnity Health Systems, Inc., and CHSPSC, LLC have identical corporate officers, and these officers are employed by CHSPSC, LLC. The Clinic's and Hospital's corporate officers are also corporate officers of CHSI, CHS/Communnity Health Systems, Inc., and CHSPSC, LLC, though CHSI, CHS/Community Health Systems, Inc., and CHSPSC, LLC have additional corporate officers who are not corporate officers of the Clinic and Hospital. Still, overlapping executives is not enough to establish the unusually high degree of control required to impute the subsidiary's jurisdictional contacts on the parent. *See Abelesz v. OTP Bank*, 692 F.3d 638, 658–59 (7th Cir. 2012) (finding "no suggestion" of an unusually high degree of control or failure to observe corporate formalities where parent company executives hold four of nine board seats of the subsidiary); *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 969 (Ind. 2006) ("LinkAmerica and Hi–Cube shared the same board of directors, but this is not

unusual in a corporate family. It does not suggest the operating personnel are common or indicate a failure to make clear in what capacity a person is acting."). Additionally, CHSI, CHSPSC LLC, the Clinic, and the Hospital have the same corporate office, located in Franklin, Tennessee.

CHSI owns an indirect interest in about 71 hospitals and associated clinics—including the Hospital and the Clinic—but does not own a direct interest in any hospital or clinic. The only entity in which CHSI has a direct ownership is CHS/Community Health Systems, Inc.

Plaintiff submitted as evidence the 2022 Community Impact Report. "Community Health Systems" and the related trademark are on its cover. Alongside the copyright information included on the last page of the report, the following text is found:

> The terms "Community Health Systems," "CHS," the "Company" or the "organization" used in this report refer to Community Health Systems, Inc. and its affiliates, or a subset of same, including CHSPSC, LLC, unless otherwise stated or indicated by context. The terms "hospitals" and "facilities" refers [*sic*] to entities owned or operated by subsidiaries or affiliates of Community Health Systems, Inc. References herein to "employees" or to "our employees" or "we" refers broadly to employees of CHS-affiliates across the organization.

Pl.'s Ex. C, at 66, ECF No. 78-4. The report describes CHS as a leading healthcare provider that had over 15 million patient encounters in 2021 across over 1000 sites of care in sixteen states. This report neither indicates that CHSI controls the Clinic or Hospital to a high degree nor shows that corporate formalities are not being observed.

According to the report, "[t]he diverse and experienced Board of Directors of Community Health Systems, Inc. actively oversees our company with a commitment to organizational integrity, ethical operations, and transparency" and "is actively involved in many aspects of our business with particular attention to compliance with financial, accounting and regulatory standards." Pl.'s Ex. C, at 56, ECF No. 78-4. As noted above, however, the day-to-day operations of the Clinic and Hospital are overseen by the Hospital's CEO, Board of Trustees, and medical

11

and administrative staff of the Clinic and Hospital, and the only business of CHSI is that of being a publicly-traded company.

Plaintiff received a June 2020 letter from then-chairman and CEO of CHSI, in which the CEO expressed pride in the "organization's" commitment to diversity and inclusion. CHSI is not mentioned by name in the document, though Community Health Systems and CHS are. This document does not demonstrate a high level of control or the failure to observe corporate formalities.

There is some overlap between corporate officers, and there is some control exerted by CHSI over its subsidiaries, including the Clinic and Hospital (such as the requirement to adopt the code of conduct). However, there is no requirement for a subsidiary to act entirely autonomously to prevent the Court from piercing the corporate veil. The Court finds that CHSI observed corporate formalities and did not exert a high degree of control over the other named entity-defendants.

### C.  Operations Involvement

Finally, if a subsidiary is merely the parent's agent, then the subsidiary's contacts can be used to establish personal jurisdiction over the parent. *McManaway v. KBR, Inc.*, 695 F. Supp. 2d 883, 896 (S.D. Ind. 2010) (citing *Wesleyan Pension Fund, Inc. v. First Albany Corp.*, 964 F. Supp. 1255, 1261–62 (S.D. Ind.1997).

Plaintiff asserts that CHSI uses CHSPSC, LLC as a mere agent to operate its subsidiaries, including the Clinic and Hospital. As noted above, CHSI and CHSPSC, LLC were independently formed and have separate Boards of Directors (with only Tim Hingtgen serving on both boards). Plaintiff presents evidence that in March 2023 the board meeting for CHSPSC, LLC was held simultaneously with board meetings for each of the subsidiaries. This evidence concerns the

relationship between CHSPSC, LLC and the subsidiaries but not CHSI. *See* Pl.'s Ex. O 9:15-10:19, ECF No. 78-16.

Plaintiff also argues that there is no evidence supporting the existence of an oral agreement under which CHSPSC, LLC provides services to CHSI. Plaintiff is correct that, in contract enforcement actions, Indiana places the burden of proof on the party claiming the existence of an oral contract. *OVRS Acquisition Corp. v. Cmty. Health Servs., Inc.*, 657 N.E.2d 117, 125 (Ind. Ct. App. 1995). Here, though, the evidence is of an oral *agreement* and not specifically an oral *contract*. *See* Pl.'s Ex. O 22:4-8, ECF No. 78-16; Tr. 89:11-17, ECF No. 70. Further, there is evidence of this agreement. CHSPSC, LLC's vice president testified to its existence under oath. Tr. 89:15-17, ECF No. 70 ("CHSPSC, LLC, has an oral agreement with Community Health Systems, Inc. to provide services, including legal services, yes."). Plaintiff asserts that the provision of services under the oral agreement means that CHSPSC, LLC is CHSI's agent, but he has not provided sufficient evidence to support this conclusion.

Plaintiff points to the CHSPSC, LLC cash management system, but using a cash management system is not equivalent to comingling funds. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 380 (7th Cir. 2008). The Clinic and Hospital "have their own bank accounts, and their money remains their money at all times. It does not become the money of any other entity unless it is paid to that entity." Tr. 134:20-135:5, ECF No. 70.

Plaintiff's arguments regarding the code of conduct and the daily operations of the Clinic and Hospital are addressed above. Plaintiff has not met his burden to show that CHSI operated its subsidiaries through using CHSPSC, LLC as its agent or through any other means.

13

## CONCLUSION

Based on the above, the Court hereby **OVERRULES** Plaintiff's objections, **ADOPTS** Judge Martin's Report and Recommendation, and makes the following factual findings:

(1) Defendant Community Health Systems, Inc. was not Plaintiff Mansour's employer or joint employer,

(2) Defendant Community Health Systems, Inc. substantially observed corporate formalities with the other entity-defendants, and

(3) Defendant Community Health Systems, Inc. was not involved in the operation of the other entity-defendants named in this case.

With these preliminary matters regarding personal jurisdiction resolved, the Court **DIRECTS** the clerk of court to **REINSTATE** the pending status of Defendant Community Health Systems, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction [DE 20], which the Court will rule on by separate order.

SO ORDERED.

ENTERED: August 11, 2025

/s/GRETCHEN S. LUND
Judge
United States District Court